IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TITO L. LONG,

                                                              OPINION AND ORDER

            Plaintiff,

                                                              18-cv-927-bbc

    v.

BRIDGET RINK, LYNN DOBBERT,
NICOLE KRAHENBUHL, KENNETH HOFFMAN
and MICHAEL WILSON,

            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff Tito Long, who is incarcerated at the Kettle Moraine Correctional Institution, is proceeding on claims that staff at the New Lisbon Correctional Institution violated his rights under the Eighth Amendment and state negligence law by failing to provide him adequate and timely medical care for his abdominal pain in June 2018. (I have amended the caption to add defendants' full names.) Before the court is defendants' motion for summary judgment. Dkt. #18. For the reasons below, I am granting the motion and closing this case.

      From the parties' proposed findings of fact and the evidence in the record, I find the following facts to be material and undisputed unless otherwise noted.

UNDISPUTED FACTS

      In June 2018, plaintiff Tito Long was incarcerated at the New Lisbon Correctional Institution, where defendants Bridget Rink, Nicole Krahenbuhl and Lynn Dobbert were

1

employed as registered nurses, defendant Dr. Karl Hoffman was a physician and defendant Michael Wilson was a correctional sergeant.

On Friday, June 22, 2018, defendant Krahenbuhl examined plaintiff, who reported having had stomach pain since the previous Tuesday. Plaintiff said the pain became worse after eating. Krahenbuhl gave him Bismatrol (Pepto Bismol) and told him to take the medication as instructed on the package. The next day, June 23, plaintiff submitted a health service request stating that his pain was getting progressively worse and asking to be seen as soon as possible. Defendant Dobbert reviewed the request on June 24 and placed plaintiff on the list of inmates to be seen by nursing staff on June 25. From her training and experience, Dobbert did not believe that plaintiff was raising an urgent medical issue that required immediate medical attention. She believed that it was appropriate to give the Bismatrol time to work.

On the morning of June 25, 2018, defendant Krahenbuhl saw plaintiff, who reported that the Bismatrol had not helped, he was having sharp pain in the middle of his chest when eating and drinking and he had abnormal stools. Krahenbuhl reviewed plaintiff's chart with defendant Hoffman, who discontinued the Meloxicam that plaintiff was taking because that medication could cause side effects of pain, bloating, burning, cramping, tenderness, nausea, vomiting and constipation. Dr. Hoffman also ordered Omeprazole, an antacid inhibitor for dyspepsia (indigestion or discomfort in the upper abdomen) and a follow-up appointment with the doctor in three weeks. Dr. Hoffman did not personally examine plaintiff on June 25 because he believed he had all the information he needed to determine the appropriate treatment for plaintiff. He is not required to see a patient to prescribe medications and

2

knew that if plaintiff continued to report pain despite the new medication, plaintiff would alert nursing staff who could consult him.

At about 8:00 p.m. on June 25, 2018, plaintiff's cellmate notified a correctional officer that plaintiff was not feeling well. Plaintiff told the officer that his stomach was hurting "very bad" and that he had just talked to the health services unit about the issue. The officer called the health services unit and spoke with defendant Krahenbuhl, who instructed the officer to have plaintiff eat crackers, drink water, take another dose of Omeprazole and give the medication time to work. After plaintiff took the medication, he vomited.

Defendant Wilson reported to work at 10:00 p.m. on June 25, 2018 and was briefed about plaintiff's condition and that the health services unit had been involved. Plaintiff's cellmate told Wilson that plaintiff was in the bathroom and needed medical attention. (Plaintiff says that Wilson ignored the cellmate's initial request for medical attention and did not respond until the cellmate asked a second time.) Wilson checked on plaintiff, who said that he was having trouble keeping things down and that his side hurt. Wilson asked plaintiff what he had thrown up if he had not been able to eat. Plaintiff explained the first time was mostly bile, while the second time was crackers, water and the Omeprazole capsule. According to plaintiff, Wilson said "[t]hey're not going to do anything, but I'll call if you want." Wilson did not contact the on-call nurse. (The parties dispute the exact nature of Wilson's conversation with plaintiff. Wilson says that he told plaintiff that he had been informed that health services was aware of what was going on, that plaintiff would be seen

3

first thing the next day and asked plaintiff if he wanted to talk to the health services. According to Wilson, plaintiff refused to talk with health services, stating that they would not do anything. Plaintiff says that Wilson stated only that "second shift told me about the bullshit that's been going on," did not say anything about health services or being seen the next day and never asked if plaintiff wanted to talk with health services. Plaintiff denies saying that health services would not do anything, and Wilson denies using the term "bullshit.") Wilson did not hear from plaintiff for the rest of the shift, even though he and other staff made rounds for wellness checks and counts throughout the shift.

Plaintiff submitted a health service request on June 25, 2018, stating that he had vomited twice after taking the Omeprazole and that he was still in pain and needed to be seen. The next morning, on June 26, defendant Rink examined plaintiff and referred him to Dr. Hoffman immediately. Based on plaintiff's reported symptoms, his examination of plaintiff and plaintiff's family history, Dr. Hoffman suspected a possible pyloric channel ulcer. He placed an order for plaintiff to be transferred to the hospital for further evaluation.

Plaintiff was admitted to Mile Bluff Medical Center on the afternoon of June 26. He reported having abdominal pain for one week that was worse with eating and drinking and having a normal night of sleep the night before he was admitted. The admitting doctor, Dr. Edward Bueno, reported that plaintiff's symptoms were consistent with acute pancreatitis. Dr. Kabir Ahmed noted that plaintiff's abdominal pain appeared to be more likely to suggest an ulcer than pancreatitis but referred plaintiff to a surgeon for a possible esophagogastroduodenoscopy. The surgeon, Dr. Napier, recommended a computed

4

tomography scan, which revealed acute and uncomplicated pancreatitis, which was reported as "mild." Dr. Kevin Butterfield diagnosed acute pancreatitis with no definite cause. Plaintiff was placed on a clear liquid diet and given intravenous fluid hydration. Dr. Ahmed reported that plaintiff appeared to be in no acute pain and ordered Tylenol as needed. The esophagogastroduodenoscopy was canceled on June 27, and plaintiff was discharged on June 30.

According to Dr. Hoffman, pancreatitis is a difficult disease to detect and plaintiff had none of the major risk factors. Dr. Hoffman would have considered pancreatitis a possibility only after unsuccessful treatment of apparent acid related problems. According to defendant Dobbert, plaintiff's reported symptoms did not warrant an emergency room referral before June 26, 2018. Before making such a referral, it was necessary to rule out conditions that could be treated at the institution.

OPINION

A. Legal Standards

Plaintiff contends that defendants all acted with deliberate indifference or at least negligence in failing to take reasonable measures to respond to or treat his severe abdominal pain over the course of five days in June 2018. A prison official may violate the Eighth Amendment if the official is "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). See also Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (Eighth Amendment

"protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain,'" including "grossly inadequate medical care."). At least for purposes of summary judgment, defendants do not argue that plaintiff's severe abdominal pain posed a serious medical need. Therefore, the question is whether plaintiff has submitted enough evidence to allow a reasonable jury to conclude that any of the defendants acted with "deliberate indifference" toward his serious medical need. Gomez v. Randle, 680 F.3d 859, 865 (7th Cir. 2012).

"Deliberate indifference" means that the officials were aware that the prisoner faced a substantial risk of serious harm but disregarded the risk by consciously failing to take reasonable measures to address it. Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997). To be considered "deliberately indifferent," an official "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Snipes v. Detella, 95 F.3d 586, 590 (7th Cir. 1996). Inadvertent error, negligence, gross negligence and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996).

Medical providers like defendants Rink, Dobbert, Krahenbuhl and Hoffman may violate the Eighth Amendment if they prescribe a course of treatment without exercising medical judgment or they do so knowing that the treatment will be ineffective. Whiting v. Wexford Health Sources, Inc., 839 F.3d 658, 662-63 (7th Cir. 2016). In cases like this one, in which a prisoner alleges that he received some treatment for his medical condition, but

6

that the treatment was inadequate, the relevant question is whether defendants' actions were "such a substantial departure from accepted professional judgment, practice, or standard, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261-62 (7th Cir. 1996). In such cases, courts must defer to a medical professional's treatment decision unless no minimally competent professional would have chosen the same course of treatment under the circumstances. Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014). A "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." Id.

Evidence sufficient to create a jury question might include the obviousness of the risk from a particular course of medical treatment, the defendant's persistence in "a course of treatment known to be ineffective" or proof that the defendant's treatment decision departed so radically from "accepted professional judgment, practice, or standards" that a jury may reasonably infer that the decision was not based on professional judgment. Id. A medical professional's choice to pursue an "easier and less efficacious treatment" or "a non-trivial delay in treating serious pain" may also support a claim of deliberate indifference. Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010) (citation omitted).

To prevail on a claim for negligence in Wisconsin, a plaintiff must prove that the defendants breached their duty of care and plaintiff suffered injury as a result. Paul v. Skemp, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 520, 625 N.W.2d 860, 865. See also Gill v.

7

Reed, 381 F.3d 649, 658-59 (7th Cir. 2004). Wisconsin law more specifically defines medical negligence as "the failure of a medical professional to 'exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances.'" Williams v. Thorpe, 2011 WL 4076085, *7 (E.D. Wis. 2011) (citing Sawyer v. Midelfort, 227 Wis. 2d 124, 149, 595 N.W.2d 423 (1999)). Therefore, to establish a prima facie claim for medical negligence against defendants Rink, Dobbert, Krahenbuhl and Hoffman, plaintiff must show that the provider failed to use the required degree of skill exercised by a reasonable provider, that plaintiff was harmed and that there is a causal connection between the provider's failure and plaintiff's harm. Id. Expert testimony is required to establish the standard of medical care, unless "the situation is one in which common knowledge affords a basis for finding negligence." Sheahan v. Suliene, 2014 WL 1233700, at *9 (W.D. Wis. 2014).

I will discuss defendants' alleged actions separately.

### B. Defendant Krahenbuhl

Plaintiff contends that defendant Krahenbuhl acted with deliberate indifference and negligence when she told a correctional officer on June 25, 2018 to have plaintiff eat crackers, drink water and take another Omeprazole, even though the officer reported that plaintiff had vomited after taking his first dose of the medication. Although plaintiff argues that Krahenbuhl should have known that the medication was ineffective for plaintiff's abdominal pain after she learned about his vomiting, he has not presented any evidence to

8

support his contention. In fact, it is undisputed that plaintiff had just seen Dr. Hoffman, who had prescribed the new medication and stopped another one of plaintiff's medications that could have been causing his symptoms. Krahenbuhl was entitled to rely on Dr. Hoffman's judgment and treatment decision as long as she did not ignore any obvious risks to his health. Holloway v. Delaware County Sheriff, 700 F.3d 1063, 1075-76 (7th Cir. 2012) (nurse is entitled to rely on doctor's instructions unless it is obvious that doctor's advice will harm prisoner); Berry v. Peterman, 604 F.3d 435, 443 (7th Cir. 2010) (Nurse's "deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient."). Here, it is undisputed that at the time Krahenbuhl responded to the correctional officer's call, she knew that plaintiff had taken only one dose of the new medication, after which he had vomited once. She told plaintiff to give the newly-prescribed medicine time to work by taking another dose with crackers and water to settle his stomach. No reasonable jury could conclude that Krahenbuhl failed to use medical judgment or the required degree of skill expected of an average prison nurse under these circumstances. Accordingly, defendant Krahenbuhl is entitled to summary judgment with respect to plaintiff's Eighth Amendment and state law negligence claims against her.

### C. Defendant Dobbert

Plaintiff's claims against defendant Dobbert are based on his allegation that Dobbert should have done more to insure that he got immediate medical treatment in response to his June 23, 2018 health service request, which Dobbert received and reviewed on June 24. It

9

is undisputed that plaintiff's health service request stated that he had been having stomach pain since the previous Tuesday and was given Bismatrol for indigestion on Friday evening, but his pain had not subsided and was getting progressively worse. It is also undisputed that Dobbert told plaintiff to give the medication a few days to work and scheduled him for a nursing appointment the following morning.

Plaintiff contends that Division of Adult Institution Policy 500.30.11(I)(P) required Dobbert to have a face-to-face visit or personally speak with him. However, that policy requires only that the nurse triage the request for medical care and makes optional a face-to-face visit or speaking directly to the inmate patient. Dkt. #22-5 at 3. Dobbert explained that based on her training and experience, she did not understand plaintiff to be raising an urgent medical problem that required immediate medical attention and believed that it was appropriate to give the Bismatrol time to work. Apart from his own opinion, plaintiff has not presented any evidence to contradict Dobbert's medical judgment that plaintiff did not need to be examined immediately or that she had any reason to believe that his condition likely would become worse if he continued to take Bismatrol for a little longer. There also is no evidence suggesting that a nurse considering symptoms similar to those reported by plaintiff would have provided different treatment. No reasonable jury could conclude that defendant Dobbert's response to his health service request was blatantly inappropriate, unreasonable or negligent under these circumstances. Accordingly, defendant Dobbert is entitled to summary judgment with respect to plaintiff's Eighth Amendment and negligence claims against her.

## D. Defendant Dr. Hoffman

Plaintiff claims that Dr. Hoffman violated his rights on June 25, 2018 when he prescribed Omeprazole without personally examining plaintiff. As with the nurse defendants, the fact that Dr. Hoffman did not personally examine plaintiff does not in itself mean that Dr. Hoffman provided plaintiff inappropriate medical treatment. Plaintiff cites Hotchkiss v. David, 713 Fed. App'x, 501 (7th Cir. 2017), for the view that a prison doctor's failure to examine an inmate can qualify as deliberate indifference. However, the facts in that case were quite different from those in plaintiff's case. In Hotchkiss, the plaintiff alleged that even though he regularly complained about problems with his leg, the prison doctor discontinued simple but effective treatment options and did not examine plaintiff or review his x-rays for several months. Id. at 503. Moreover, the question in Hotchkiss was whether the plaintiff had stated a claim for deliberate indifference upon which relief could be granted, and not whether he had presented sufficient evidence to survive defendant's motion for summary judgment. Id. at 503-04 (finding that district judge's conclusion that plaintiff received sufficient treatment was premature at screening stage).

In this case, the undisputed facts show that Dr. Hoffman reviewed plaintiff's chart with defendant Krahenbuhl after she personally examined plaintiff on June 25, 2018, discontinued one of plaintiff's medications that may have been contributing to his symptoms and prescribed Omeprazole. Dr. Hoffman explained that in his medical judgment, he had all the medical information he needed to make a decision with respect to treating what he suspected to be an acid-related problem. Plaintiff criticizes Dr. Hoffman for merely

11

providing a different antacid after one already had proven ineffective. However, plaintiff has not presented any evidence apart from his own opinion to contradict Hoffman's medical judgment or show that Hoffman failed to use the required degree of skill exercised by a reasonable provider. In addition, when plaintiff notified the health services unit on June 25, 2018, that the medication made him vomit twice and was not controlling his symptoms, Dr. Hoffman personally examined plaintiff the next morning, reviewed his medical history and transferred him to the hospital for further evaluation. Both Hoffman and Dobbert have offered undisputed medical opinions that up to that point, plaintiff had not presented symptoms that required emergency medical care or made clear that plaintiff was suffering from pancreatitis. Accordingly, defendant Dr. Hoffman is entitled to summary judgment on plaintiff's Eighth Amendment and negligence law claims against him.

E.  Defendant Wilson

Plaintiff's claims against defendant Wilson are based on his allegations that Wilson denied and delayed him necessary medical treatment on June 25, 2018, when Wilson failed to call the on-call nurse to report that plaintiff had vomited a second time after taking a second dose of Omeprazole. Although the parties disagree about what Wilson and plaintiff said to each other when Wilson came on duty at 10 p.m. that evening, it is undisputed that second shift briefed Wilson on plaintiff's situation and the fact that he had been seen in the health services unit, and that Wilson checked on plaintiff. Wilson did not call the health service unit that evening. Although plaintiff avers in his affidavit that his "purpose" in notifying Wilson of his symptoms was for Wilson to call health services, dkt. #27 at ¶ 29,

he also avers that Wilson stated that "second shift told me about the bullshit that's been going on" and that "[t]hey're not going to do anything, but I'll call health services if you want." Id. at ¶¶ 25-26. Plaintiff does not aver, or even allege, that he asked Wilson to call health services and that Wilson refused to do so. In fact, Wilson knew that plaintiff had seen someone in the health services unit and had another appointment the next morning. In addition, it is undisputed that plaintiff did not complain to Wilson or any other staff about vomiting or stomach pain for the rest of the night and that the emergency room admission notes from the next day state that he had a regular night of sleep. Without more, a reasonable jury would not find that Wilson acted with deliberate indifference to plaintiff's serious medical need or breached his duty of care toward plaintiff, causing plaintiff further injury. Accordingly, defendant Wilson is entitled to summary judgment with respect to plaintiff's Eighth Amendment and negligence claims against him.

### F. Defendant Rink

In his complaint, plaintiff alleged that defendant Rink did not see him in person and told him to submit a health service request after a correctional officer called the health services unit about plaintiff's severe abdominal pain on June 22, 2018. Although plaintiff repeats this allegation in his response brief and declaration, he has not proposed any findings of fact in support of his claim against Rink. This court's summary judgment procedures, which are attached to the March 25, 2019 preliminary pretrial conference order entered in this case, dkt. #12, warn litigants that "[a]ll facts necessary to sustain a party's position on

a motion for summary judgment must be explicitly proposed as findings of fact," and "[t]he court will not search the record for factual evidence. Even if there is evidence in the record to support your position on summary judgment, if you do not propose a finding of fact with the proper citation, the court will not consider that evidence when deciding the motion." Proc. to be Followed on Motions for Summ. Judg., § II.C. at p. 1. The Court of Appeals for the Seventh Circuit "has routinely held that a district court may strictly enforce compliance with its local rules regarding summary judgment motions." Abraham v. Washington Group International, Inc., 766 F.3d 735, 737 (7th Cir. 2014). See also Schmidt v. Eagle Waste & Recycling, Inc., 599 F.3d 626, 630-31 (7th Cir. 2010) (holding that district court did not err when it deemed defendant's proposed findings of fact admitted and refused to consider additional facts because of plaintiff's failure to follow the local procedures on proposed findings of fact). Therefore, I find that plaintiff has failed to present any evidence to support his Eighth Amendment and negligence claims against defendant Rink.

In any event, even if I were to consider plaintiff's averments to be proposed findings of fact, there is no evidence that defendant Rink unreasonably delayed plaintiff's treatment or otherwise acted with deliberate indifference or negligence to his severe abdominal pain by instructing him to file a health service request. As with defendant Dobbert, plaintiff argues that department policy required Rink to see or speak with him in person, but that argument fails for the same reasons explained above. In addition, a nurse's decision not to examine an inmate in person does not in itself qualify as deliberate indifference or negligence.

14

At defendant Rink's instruction, plaintiff filed a health service request and saw nursing staff for treatment on the same day. Although plaintiff contends that he had to wait nine hours for treatment, he has failed to present any evidence that Rink knew he needed immediate treatment or that seeing a nurse any earlier would have produced a different result. A reasonable jury could not conclude from plaintiff's allegations that defendant Rink failed to use medical judgment or failed to act with the requisite standard of care in making the decision not to see plaintiff immediately for his abdominal pain. (Plaintiff's only other interaction with defendant Rink was during his visit to health services on June 26, 2018. However, it is undisputed that when Rink saw plaintiff on that day, she immediately notified Dr. Hoffman of plaintiff's continued stomach pain.) Accordingly, defendant Rink is entitled to summary judgment with respect to plaintiff's claims against her.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Bridget Rink, Lynn Dobbert, Nicole Krahenbuhl, Kenneth Hoffman and Michael Wilson, dkt. #18, is GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 25th day of March, 2020.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge